UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

COMMUNICATIONS NETWORK
BILLING, INC., a Nevada corporation,

        Plaintiff,

v.

        Civil Case No. 17-10260
        Honorable Linda V. Parker

ILD TELECOMMUNICATIONS, INC.,
nka ILD CORP., a Delaware corporation,

        Defendant.
_____/

**OPINION AND ORDER (1) GRANTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(2) AND (2) DENYING AS MOOT DEFENDANT'S MOTION TO TRANSFER VENUE [ECF NO. 11]**

## I.    Introduction

This lawsuit arises from an agreement made between Plaintiff Communications Network Billing, Inc. ("Plaintiff" or "CNBI") and Defendant ILD Telecommunications, Inc. nka ILD Corp. ("Defendant" or "ILD"). (ECF No. 1.) Through the agreement, Plaintiff hired Defendant for billing and collection work related to Plaintiff's long distance services. (*Id.* at Pg ID 2.) Plaintiff alleges Defendant failed to remit fees and owes Plaintiff $838,870.92. (*Id.* at Pg ID 3.)

Presently before the court is Defendant's motion to dismiss or in the alternative motion to transfer venue, filed pursuant to Federal Rule of Civil

Procedure 12(b)(2) and 28 U.S.C. § 1404(a) respectively on February 21, 2017. The motion has been fully briefed. Finding the facts and legal arguments sufficiently presented in the parties' briefs, the Court dispensed with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f) on this date. For the reasons that follow, the Court is granting Defendant's motion to dismiss and denying the motion to transfer venue as moot.

## II. Applicable Standards

When reviewing a Rule 12(b)(2) motion, a federal district court may proceed by relying solely on written submissions and affidavits to resolve the jurisdictional questions or it may permit limited discovery or hold an evidentiary hearing in aid of the motion. *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989) (citation omitted). In all scenarios, " 'the plaintiff always bears the burden of establishing that jurisdiction exists.'" *Id.* (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936).

A federal court may only exercise personal jurisdiction in a diversity case if such jurisdiction is (1) authorized by the law of the state in which the court sits; and (2) is otherwise consistent with the Due Process Clause of the Fourteenth Amendment. *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1115 (6th Cir. 1994); *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir. 1980). The Sixth Circuit "historically has understood Michigan to intend its long-arm statute to extend to

the boundaries of the fourteenth amendment" and therefore, "the court need only determine whether exercising personal jurisdiction violates constitutional due process." *Children's Legal Servs., PLLC v. Shore Levin and Derita, PC*, 850 F.Supp.2d 673, 679 (6th Cir. 2012) (quoting *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) and *Bridgeport Music, Inc. v. Still N The Water Publ'g*, 327 F.3d 472, 477 (6th Cir. 2003)).

Personal jurisdiction over an out-of-state defendant arises from "certain minimum contacts with [the forum] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) (internal citation omitted). Personal jurisdiction takes two forms: general and specific. "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citing *Int'l Shoe Co.*, 326 U.S. at 317.) "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded at home." *Id.* at 924.

The Supreme Court recently reiterated the governing principles of specific jurisdiction in *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773 (2017). "In order for a state court to exercise specific jurisdiction, 'the *suit*' must 'aris[e] out of or relat[e] to the defendant's contacts with the forum.'" *Bristol-Myers Squibb Co.*, 137 S.Ct. at 1780 (citing *Daimler AG v. Bauman*, 571 U.S. ---, 134 S. Ct. 746, 754 (2014) (internal quotation marks omitted; emphasis added)); *see Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–473 (1985); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414. "In other words, there must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* (citing *Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 919.)

The Sixth Circuit has established a three-part test to determine whether a court may exercise specific personal jurisdiction:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000) (citing *Southern Machine Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).

A defendant "purposefully avails" himself if his "contacts proximately result from the actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Burger King Corp.* 471 U.S.at 475. This requirement "ensures that a defendant will not be haled into a jurisdiction solely as the result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or third person.'" *Id.* at 475 (quoting *Keeton v. Hustler Magazine*, 465 U.S. 770, 774 (1984); *Helicopteros*, 466 U.S. at 417)).

A court may transfer an action under 28 U.S.C. § 1404(a) if "(1) the action could have been brought in the transferee district court; (2) a transfer serves the interest of justice; and (3) a transfer is in the convenience of the witnesses and parties." *Kepler v. ITT Sheraton Corp.*, 860 F.Supp. 393, 398 (E.D. Mich.1994) (internal citation omitted). In determining whether transfer is proper, courts consider the following factors:

> (1) the convenience of the witnesses; (2) the location of relevant documents and relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice.

*IFL Group v. World Wide Flight Servs.*, 306 F.Supp.2d 709, 712 (E.D. Mich. 2004) (citing *Overland, Inc. v. Taylor*, 79 F.Supp.2d 809, 811 (E.D. Mich. 2000)).

Defendant bears the burden of showing that transfer of venue is appropriate. *Id.* at 714. Plaintiff's choice of forum deserves "foremost consideration" and should not be disturbed unless the balance of factors strongly favors Defendant. *West Amer. Insurance Co. v. Potts*, No. 89–6091, 1990 WL 104034 at \*2 (6th Cir. July 25, 1990) (unpublished) (citing *Nicol v. Koscinski*, 188 F.2d 537 (6th Cir.1951)). The convenience of the witnesses is "one of the most important factors in determining whether to grant a motion to change venue under § 1404(a)." *Downing*, No. 09-14351, 2010 WL 1494767 at \*5 (internal citation omitted).

### III. Background

Plaintiff CNBI provides long distance phone services to customers. (ECF No. 1 ¶ 5.) On May 12, 2004, Plaintiff entered into the Billing and Collections Agreement ("Agreement") with Defendant regarding billing and collections. (*Id.* at ¶ 6.) The Agreement stated that Defendant would provide billing and collection services for call records supplied by Plaintiff. (ECF No. 1-1 at Pg ID 13.) In particular, ILD would receive Plaintiff's billing records and transmit them to local exchange carriers. (ECF No. 11 at Pg ID 47.) The local exchange carriers would bill and collect the charges. (*Id.*) In return for providing billing and collection services, CNBI would pay ILD certain fees and charges. (ECF No. 1 ¶ 8.) Plaintiff alleges that Defendant failed to remit the fees it collected based on the call records supplied by Plaintiff. (*Id.* at ¶ 9.)

6

The Agreement states that it is between "[CNBI], a Nevada limited liability company with its principal office at 6701 Democracy Blvd, Suite 300, Bethesda, MD, 20817 and [ILD], a Delaware corporation with its principal office located at 16200 Addison Road, Suite 100, Addison, Texas 75001." (ECF No. 1-1 at Pg ID 13.) However, Plaintiff's complaint states that Plaintiff is a Nevada corporation with a principal place of business in Wayne County, Michigan. (ECF No. 1 ¶ 1.) The complaint also states that Defendant is a Delaware corporation that conducts business in Wayne County, Michigan. (*Id.* ¶ 2.)

Defendant filed their motion to dismiss on February 21, 2017 alleging that this Court lacks personal jurisdiction over the matter. Defendant argues that it is not subject to personal jurisdiction in Michigan for four reasons. First, ILD argues that it is not subject to general personal jurisdiction because it does not conduct business, own properties, or have a corporate presence in Michigan. (ECF No. 11 at Pg ID 54.) Rather, ILD states it is a Delaware corporation with a principal place of business in Florida. (*Id.* at Pg ID 47.) Second, ILD contends that it is not subject to specific personal jurisdiction because it did not purposefully avail itself of the privilege of doing business in Michigan. (*Id.* at Pg ID 56.) Third, Defendant alleges that Plaintiff's claims do not arise from ILD's activities in Michigan. (*Id.* at Pg ID 59.) Fourth, Defendant claims their alleged acts do not have a substantial enough connection to make personal jurisdiction in Michigan

7

reasonable. (*Id.* at Pg ID 60.) If this Court finds that there is personal jurisdiction, Defendant requests that this case be transferred to the Southern District of Florida for the convenience of the parties and witnesses and in the interest of justice. (*Id.* at Pg ID 62.)

In response, Plaintiff reminds the Court that it need only make a prima facie showing of jurisdiction to defeat a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2). (ECF No. 13 at Pg ID 84.) Next, Plaintiff argues that Defendant purposefully availed itself of the privilege to conduct business in Michigan. (*Id.* at Pg ID 88.) In particular, Plaintiff states that "[w]henever ILD communicated with CNBI regarding its performance under the Agreement, billing, services, or general inquiries and business operations, it did so with BOSS' employees[1] working from CNBI's office in Harper Woods, Michigan." (*Id.* at Pg ID 89.) Further, Defendant allegedly availed themselves to Michigan by remitting CNBI's payments into its Michigan-based Comerica bank accounts on a weekly basis. (*Id.*) According to Plaintiff, Defendant has therefore enjoyed the benefits of conducting business in Michigan. (*Id.*)

Next, Plaintiff argues that this action arises from Defendant's conduct in Michigan because Defendant failed to make timely payments to CNBI's Michigan-

---

[1] In their opposition brief, Plaintiff explains that it outsources its day-to-day operations to a third party, Back Office Support Systems, Inc. ("BOSS").

8

based bank accounts. (*Id.* at Pg ID 90.) Plaintiff also contends that Defendant's activities have a substantial connection to Michigan.

Lastly, Plaintiff requests that this matter not be transferred to the Southern District of Florida because transfer would shift the burden from Defendant to Plaintiff. (*Id.* at Pg ID 94.)

## IV. Analysis

### A. General Jurisdiction

This Court can assert personal jurisdiction over a foreign company if their contacts with the state are so "continuous and systematic" that the company finds that they are "essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 919 (citing *Int'l Shoe Co.*, 326 U.S. at 317.) Plaintiff does not allege that Defendant's conduct is continuous and systematic to warrant general jurisdiction over Defendant. Defendant has no physical contacts in Michigan nor does Defendant regularly conduct business in Michigan. Therefore, the Court does not have general jurisdiction over Defendant ILD.

### B. Specific Jurisdiction

The Court will now turn to the Sixth Circuit's three-part test to determine whether specific jurisdiction exists over ILD. As previously noted, to establish specific jurisdiction, the Court must find that:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state.

> Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Calphalon Corp.*, 228 F.3d at 721 (citing *Southern Machine Co*, 401 F.2d at 381 (6th Cir. 1968)).

Plaintiff argues that Defendant purposefully availed themselves to jurisdiction in Michigan because of its communications with BOSS and payments to Plaintiff's Michigan-based accounts. (ECF No. 13 at Pg ID 89.) Plaintiff notes that "[f]or nearly 13 years, ILD deposited tens of thousands of dollars on a weekly basis into CNBI's Michigan based Comerica account." (*Id.* at Pg ID 83.) These repeated communications and transactions, Plaintiff argues, are sufficient to establish purposeful availment.

First, the Court notes that the following have remained undisputed, as noted by Defendant: (1) Defendant did not travel to Michigan to negotiate the Agreement; (2) Defendant's alleged statements that form the basis for the fraud claim were not made in Michigan; (3) Defendant sent money to Plaintiff from Florida; and (4) Defendant has no physical presence in Michigan. (ECF No. 15 at Pg ID 119.)

Defendant's contacts with Michigan are insufficient to establish purposeful availment. Defendant's only contacts with the forum were communications with a

third party, BOSS, and depositing remittances into Plaintiff's bank account. In *Int'l Tech. Consultants v. Euroglas*, the Sixth Circuit similarly determined that the out-of-state defendant's letters, phone calls, and faxes to plaintiff in Michigan did not alter its determination that the court did not have personal jurisdiction over defendant. 107 F.3d 386, 395 (6th Cir. 1997). The Sixth Circuit explained:

> [T]he only reason the communications in question here were directed to Michigan was that [Plaintiff] found it convenient to be present there. [Defendant] was not attempting to exploit any market for its products in Michigan, and the company presumably would have been pleased to communicate with [Plaintiff] wherever the latter wished….From the perspective of [Defendant], it was purely fortuitous that [Plaintiff] happened to have a Michigan address.

*Id.*; *see also Wizie.com LLC v. Borukhin*, No. 2:14-10391, 2014 WL 2743375 (E.D. Mich. June 17, 2014) (finding that exercising personal jurisdiction over defendant unreasonable where only contacts with forum state were emails, faxes, and phone calls). The Court similarly finds that it would be unreasonable to exercise specific personal jurisdiction over ILD for its communications with BOSS and deposits into the Michigan-based bank account.

The second prong of the Sixth Circuit test requires that the cause of action arise from the defendant's activities in the forum state. The Supreme Court's recent decision in *Brystol-Myers Squibb Co.* affirmed this principle, stating that "there must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is

11

therefore subject to the State's regulation. *Bristol-Myers Squibb Co.*, 137 S.Ct. at 1780 (citing *Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 919.) The Complaint makes clear that the underlying controversy in this matter is ILD's alleged failure to remit the fees collected based on the call records supplied by CNBI. (ECF No. 1.) Therefore, the critical question is where Defendant allegedly made the decision to withhold CNBI's payments.

Defendant provided a declaration by Kathy McQuade, the vice-president of Billing and Collection of ILD. In the declaration, McQuade states that Defendant's billing clearinghouse division is based in Fort Lauderdale, Florida. (See ECF No. 11 at Pg ID 70.) The billing clearinghouse division in Fort Lauderdale is responsible for all of the servicing of the account, as well as the following tasks: generating and reviewing client settlement statements; addressing client inquiries and problems; and maintaining and negotiating the local exchange carrier agreements. (*Id.*)

With respect to CNBI, the staff members at the billing clearinghouse operations in Florida would submit monthly bill record data over the internet to ILD's billing and collection network database in Texas. (*Id.* at Pg ID 71.) After the data is aggregated in Texas, it is sent to third-party vendors in Virginia or Texas who would include the phone charges on a customer's local telephone bill. (*Id.*) Once the customer paid their bill, the money would be sent to ILD's bank in

Florida. (*Id.*) Any money sent from ILD to CNBI was sent from ILD's bank account in Florida to the bank account designated by the customer, CNBI. (ECF No. 11 at Pg ID 51.) Based on these facts, the Court finds that any decision to withhold money from CNBI would have occurred in Florida. Therefore, Plaintiff fails to satisfy the second prong of the test.

The third prong of the test calls for an inquiry into whether defendant has a "substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Calphalon Corp.*, 228 F.3d at 721. For the above stated reasons, the Court finds that Defendant lacks a substantial connection with Michigan to make the exercise of jurisdiction over ILD reasonable.

## V. Conclusion

The Court therefore concludes that it lacks personal jurisdiction over the Defendant in this matter. Therefore, the Court does not need to discuss the issue of transferring venue.

Accordingly,

**IT IS ORDERED** that Defendant's motion to dismiss pursuant to Federal Rule of Procedure 12(b)(2) is **GRANTED**;

**IT IS FURTHER ORDERED** that Defendant's motion to transfer venue is **DENIED AS MOOT**;

**IT IS FURTHER ORDERED** that Plaintiff's complaint is dismissed without prejudice.

> s/ Linda V. Parker
> LINDA V. PARKER
> U.S. DISTRICT JUDGE

Dated: August 16, 2017

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, August 16, 2017, by electronic and/or U.S. First Class mail.

> s/ R. Loury
> Case Manager